GASPAR BERIO, Plaintiff and Appellant, v. SANTIAGO DE SANTIAGO, Defendant and Appellee.

No. 5323. Argued June 10, 1931.—Decided March 28, 1932.

234

*L. A. García del Rosario* and *M. A. García del Rosario* for appellant.
*C. Domínguez Rubio* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

The appellee in the present case moved to dismiss the appeal on the ground that no copy of the judgment had been included in the judgment roll. The appellant opposed the motion. We find after an examination of the record that although there should have appeared at the foot of the judgment transcribed therein a notice of its entry in the proper book, such defect can be considered as being supplied by the copy of the service of the judgment in which the party is advised that a copy of such judgment "was duly entered in the proper book," and by the copies attached to the opposition.

While the motion to dismiss was pending, the case was heard on its merits. It appears from the record that Gaspar Berio brought suit against Santiago de Santiago to recover $622, with interest thereon and costs. He based his claim on the following facts:

"That on or about April 26, 1927, a current account was opened between the plaintiff and the defendant, pursuant to which the defendant received money and goods from the business establishment kept by the plaintiff in the ward of Cuchillas, Corozal, which account on being liquidated on July 30, 1927, gave a balance of $622.02 in favor of the plaintiff.

"That ever since the date of the said liquidation, or, July 30, 1927, the plaintiff has attempted to collect the said sum of $622.02 but without sucess up to the present, as the defendant has refused and still refuses to satisfy the same.

"That the sum owing by the defendant to the plaintiff represents a liquidated account and is demandable, the defendant having failed to pay the same either in whole or in part."

The defendant in his answer denied generally and specifically the averments of the complaint.

The case went to trial and the court gave judgment for the defendant, whereupon the plaintiff took the present appeal. In his brief he assigns six errors: the first is the admission of evidence of the defendant on facts which he failed to plead affirmatively in the answer; the second is that the contract was designated one of agency and not of current account; the third, fourth, and fifth refer to the weighing of the evidence; and the sixth relates to the imposition of costs on the plaintiff.

We will consider together the first two assignments. The appellant complains that the court allowed the defendant to make proof at the trial that the $1,600 referred to in the complaint was delivered to him to purchase tobacco on commission, and that he bought and delivered said tobacco to the satisfaction of the plaintiff, notwithstanding the fact that the defendant had confined himself in his answer to a general and specific denial of the facts alleged in the complaint. The appellant cites a great many authorities in support of his contention.

In order to properly determine the above question, it becomes necessary to consider, not only the complaint, but also the attitude assumed by the plaintiff at the trial.

The plaintiff himself was the first witness to take the stand. The following question was put to him: "When did you say this account began?" He answered: "On April 5, 1927, I gave him a check for $1,000 on account for his tobacco crop." The defendant objected "because that has not been

specifically alleged," and the court sustained the objection but afterwards allowed the plaintiff and his witnesses to explain his theory, that is, that the $1,600 was handed by the plaintiff to the defendant in two instalments or checks, one for $1,000 and another for $600, to buy his tobacco crop; that the defendant delivered a quantity of tobacco worth $940.93 and owed a balance of $633.22.

Did or did not the plaintiff change his allegations? In our judgment the question should be answered in the affirmative.

The complaint alleged the opening of a current account between the plaintiff and the defendant. Was it really a current account what the plaintiff intended to establish at the trial? It is said in the *Enciclopedia Jurídica Española,* vol. 10, p. 50:

"CURRENT ACCOUNT. A merchant who regularly and continuously makes business transactions with another merchant can liquidate them in two different ways: either through partial liquidations, one for each of the transactions entered into, or by opening a general account to which he carries all the transactions between him and his business colleague and by making a general liquidation thereof at a specified time. The latter system, more convenient and expedient, is the one which merchants discovered long ago and which, when mutually adhered to, is known as a current account.

"As the subject matter of the individual transactions is the sale of the effects covered by each of them, it is clear and natural that the aggregate, or the current account, must similarly be a continuous purchase and sale, within the period of liquidation thereof, without any other break than the striking of a balance.

"Such a current account has spontaneously arisen from the account books of merchants, and for that reason some people claim that it is rather a mere system of accounting than a contract. This might be true when the account has reference to things and persons, whether merchants or not, who are only interested in knowing their respective *debit* or *credit;* but it will no be so where there is involved a continuous course of dealing between two merchants whose transactions are liquidated in the aforesaid manner, as in such a case, whether by express or implied agreement, there exists necessarily a very special contract which the mercantile practice has regulated in a

most adequate manner and which begins to appear in Codes of Commerce.

"Our own Code, however, fails to regulate this contract, although the Legislators plainly showed that they knew of its existence, since article 909 of this Code excludes from the assets of the bankrupt estate the moneys forwarded not in open account to the bankrupt for delivery to particular persons in the name and for the account of the sender, or to discharge debts which are to be paid in the domicile of the bankrupt. Such an exclusion shows that the lawmaker when establishing the above exception, took special notice, of the fact that the immediate effect of the current account is the transfer of the ownership of the things covered by the account.

"That it is a contract, as above stated, and not a practical fact or merely a method of accounting, and moreover a very special contract, is shown by the fact that the said account produces legal effects quite distinct from those flowing from the several individual transactions that make it up; a contract that can not, therefore, be confused with said transactions, in the same manner that contracts giving rise to bills of exchange can not be mistaken for the instruments themselves, whose legal results and effects are quite different from the contract or contracts in which they originated. As we have already stated that this current account can have no existence without the consent of those who maintain the same, such consent, whether the result of an express or an implied agreement between the parties, establishes the contractual nexus.

"As in such account the parties can be either creditor or debtor, indiscriminately, the respective credits therein entered entitled the creditor—so that neither party be favored to the prejudice of the other—to a rate of interest which is equal for both parties. This operates to facilitate the liquidation of the account and to render its existence possible.

"Bearing in mind the simple working of such account, we may define it as a contract whereby two merchants agree to deliver to each other goods or values of any kind in full ownership and excluding interest on the respective amounts thereof, subject to the condition that the amount should appear as debits in the account of the one receiving the merchandise, or as a credit in the account of the one delivering the same, and that the respective debits be liquidated, and extinguished by compensation at the time stipulated therefor, except the final balance resulting in favor of either party to the account."

In practice, the scope of the ''account current'' has been extended to other relations (1 *Digesto de Puerto Rico,* p. 797 *et seq.*). However, if two persons mutually agree, one to buy and the other to sell a tobacco crop, and pursuant thereto the former advances to the latter $1,600 and the latter delivers to the former tobacco worth $940.93, it can not be maintained that such an agreement constitutes purely and simply a current account from the fact that one of the parties is a merchant and enters the cash payments in his books charging besides to the other $1.70 for gasoline and oil.

Under those circumstances, the issue thus being raised by the plaintiff himself, we do not think that the trial court erred in allowing the defendant to prove that the $1,600 which he received from the plaintiff was not given to him in payment of his tobacco crop but for the purchase of tobacco for the plaintiff at $25 per hundredweight, which agreement he performed by delivering the tobacco so purchased to the plaintiff to the satisfaction of the latter.

The first two errors, then, are nonexistent. Similarly as to the next three errors assigned.

In his long argument the appellant not only claims that the trial court erred in weighing the evidence but also that it acted moved by passion, prejudice, and bias.

The evidence was conflicting and the conflict was resolved against the plaintiff. The court complied with the law and set forth the grounds relied on for its decision. Really, these are not very satisfactory. However, it must be admitted that it is very difficult to give expression to the true reason for the action of the trial judge in such cases in giving credence to some of the witnesses and refusing it to others. There is an internal element that does not lend itself to be translated into words and which must be respected by appellate courts, unless improper conduct be shown or signs of passion, prejudice, or partiality appear from the record, or where the conclusion reached is manifestly erroneous. Such is not the case here. On the contrary, it is to be noted that the judge allowed

both sides to defend equally without hindrance. He was afterwards compelled to adjust the conflict in the evidence and he acted conscientiously, and it can not be maintained that he was not absolutely justified. We might have said the same thing, perhaps, if he had reached a different conclusion, as this is a border-line case.

This leads us to the only possible conclusion favoring the appellant, that is, the existence of the sixth error assigned. The imposition of costs does not seem to us to be justified.

Therefore, the judgment appealed from must be modified by substituting, for the pronouncement it contains regarding costs, the following: "without special pronouncement of costs," and as so modified the judgment is affirmed.